IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIMOTHY ESAU HOLBROOK, JR. #415664   *
                    SID#2058362
Plaintiff                                    *

v   *   Civil Action No. WMN-14-3543

KATHLEEN S. GREEN   *

Defendant   *
                                          ***

## MEMORANDUM

Pending is Timothy Esau Holbrook, Jr.'s ("Holbrook") Complaint pursuant to 42 U.S.C. §1983. Defendant Kathleen Green, Warden of Eastern Correctional Institution, by her counsel, has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF 18). Holbrook filed a Response in opposition. (ECF 21).[1] For reasons to follow, Defendant's Motion to Dismiss (ECF 18) WILL BE GRANTED.

## BACKGROUND

Holbrook is a Division of Correction inmate housed at the Eastern Correctional Institution ("ECI") in Westover, Maryland. He claims that Defendant "has been allowing her staff and administration to conduct acts of unprofessionalism, assault[2], attempted entrapment, threatening actions, unconstitutional acts, neglect and harassment reverence or retaliation to take place and continue to go on…" because he refused to provide information to prison intelligence officers concerning contraband smuggled into ECI. (ECF 1, p. 4).

---

[1] Holbrook was provided an opportunity to reply pursuant to *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975). (ECF 20).

[2] Holbrook does not allege when or where the assault took place or claim to have suffered injury.

Holbrook claims he was first questioned about contraband smuggling at ECI in August of 2014, when he was housed at the Poplar Hill Pre-Release Institution and on work release status. (ECF 1). He alleges that on August 26, 2014, he was placed on administrative segregation without explanation.[3] He was later informed that he was assigned to administrative segregation at the request of Lieutenant Clayton and Officer Purcell in the Intelligence Department at ECI. Holbrook contends Officers Purcell ("Purcell") and Nelson threatened him.[4] *Id.*

Holbrook asserts Purcell informed him on or about September 4, 2014, that he was under investigation for conspiring to smuggle contraband into ECI. *Id.* Holbrook claims Purcell told him that if did not help him by providing information, Purcell would make his life "a living hell" and write a report identifying him as the "largest drug kingpin in the prison." *Id.* at 6. On another occasion, Purcell threatened to move Holbrook to a different building and have his "head busted up." *Id.* at 7. Holbrook also alleges Purcell wrongfully issued a rule infraction for an act committed on September 8, 2013. (ECF 1).[5] Additionally, Holbrook faults his case manager, "Mrs. Banzbolgeal," for increasing his security level from pre-release/work release to medium level #1.[6]

---

[3] Holbrook was placed on administrative segregation on August 28, 2014, pending investigation, removed from this status on September 4, 2014, and returned to housing at Poplar Hill Pre-Release Unit. (ECF 18-3).

[4] Holbrook does not name any correctional officers as defendants. Defendant, however, has submitted Officer Nelson and Officer Purcell's declarations. Both officers deny threatening Holbrook for failing to divulge information relating to contraband smuggled into ECI. (ECF 18-3, 3).

[5] On October 31, 2014, Holbrook was issued a Notice of Inmate Rule Violation for violating Rule 118 (possession of unauthorized financial account or currency), Rule 406 (possession or passing of contraband), and Rule 409 (use of a telephone without authorization). (ECF 18-4, ¶ 11). After an adjustment hearing held on December 1, 2014, Holbrook was found guilty of violating Rules 118, 406, and 409, and given 75 days of disciplinary segregation. (ECF 18-4, ¶ 11).

[6] Defendant's submissions show Holbrook was transferred to medium security housing in error on September 23, 2014, and changed to minimum security status on September 29, 2014. (ECF 18-6).

As redress, Holbrook seeks injunctive and declaratory relief and damages of unstated sum. He asks for the "harassment, retaliation, revenge to cease," dismissal of his "adjustment," and transfer to a minimum security facility or release on parole. (ECF 1, p. 4).

## LEGAL STANDARD

Defendant has filed this Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In evaluating a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must accept as true all well-pled allegations of the complaint and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive dismissal, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 554, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A court need not accept a plaintiff's legal conclusions as true, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. This court liberally construes Holbrook's pleadings in light of the fact that he is self-represented. *See Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir.1978); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

Defendant asserts that she is entitled to dismissal in the absence of any allegation by Holbrook that she personally participated in the matters at issue. Additionally, she raises Holbrook's failure to exhaust his administrative remedies as an affirmative defense.

1. **Lack of Personal Involvement**

Holbrook does not state whether he seeks redress from Green in her personal or official capacity, but there is no basis for liability under either theory. Liability is imposed under § 1983 on "any person who shall subject, or cause to be subjected, any person ... to the deprivation of any rights...." 42 U.S.C. § 1983. The statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), rev'd on other grounds, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (in order for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights ...") (quoting *Bennett v. Gravelle*, 323 F.Supp. 203, 214 (D. Md. 1971), aff'd, 451 F.2d 1011 (4th Cir. 1971)). Moreover, an individual cannot be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior. *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).

In a § 1983 action, liability of a supervisory official such as Warden Green "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their

care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Holbrook provides no evidence that Green was directly responsible for any alleged wrongdoing or culpable under a theory of supervisory liability. Accordingly, Green is entitled to dismissal on this ground.

   2. **Exhaustion of Administrative Remedies**

Defendant also maintains Holbrook failed to exhaust his claims through the available administrative remedy procedure.

The Prisoner Litigation Reform Act (PLRA) provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The statute requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F.Supp.2d 523, 530 (D. Md. 2003), aff'd 98 F.App'x 253 (4th Cir. 2004). Exhaustion is required even if the relief sought is not attainable through resort to the administrative remedy procedure. *Booth v. Churner*, 532 U.S. 731, 740–41 (2001). A claim which has not been exhausted may not be considered by the court. *See Jones v. Bock*, 549 U.S.

199, 220 (2007). Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

On November 2, 2014, Holbrook filed Administrative Remedy Procedure ("ARP") request ECI-ARP-1897-14, complaining that he had been subject to entrapment, denied his personal property, threatened with revenge, physically assaulted by Officer Purcell,[7] and threatened by another inmate. He stated he was in fear of his safety and well-being. (ECF 18-4, 18-9). The ARP was dismissed on November 5, 2014, and Holbrook was instructed to resubmit and include one issue or a reasonable number of closely related issues by November 11, 2014. *Id.* Holbrook did not resubmit the ARP or file another ARP request to resolve these concerns. (ECF 18-4).

Holbrook does not dispute Defendant's assertion that he has failed to present his claims through all three steps of the administrative process, and he does not aver the ARP process was unavailable to him. Accordingly, this case is also subject to dismissal for failure to exhaust administrative remedies.

3. **Failure to State a Claim**

It bears further note that even had Holbrook exhausted his claims, these claims would remain subject to dismissal because none allege a federal claim. In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal constitutional right

---

[7] As noted, Purcell is not named as a defendant. Defendant has filed R. Purcell's declaration in which he attests that at no time did he or any other officer in his presence threaten Holbrook for failure to divulge information relating to contraband smuggled into ECI. (ECF 18-2). Purcell also attests that at no time did he or any officer in his presence threaten to move Holbrook to another building, "put the word out that he is a snitch and an old gang member, or to have physical injury inflicted upon Holbrook." *Id.* Purcell also states at no time did he or any other officer in his presence fabricate a notice of inmate rule against Holbrook. *Id.*

or a right secured by federal law. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). To state a claim under § 1983, a plaintiff must: 1) "allege the violation of a right secured by the Constitution and laws of the United States"; and 2) "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Harassment and Retaliation

"[N]ot all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). Mere verbal abuse and taunting inmates by guards, including aggravating language, does not state a constitutional claim. *See McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (stating "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"). Holbrook's assertions of verbal harassment, even if assumed to be true, fail to amount to an abridgement of his constitutional rights.

In regard to his retaliation claim, Holbrook fails to allege Defendant's actions (or those of corrections staff) were "taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Holbrook does not identify a constitutional right or federal law purportedly violated by Defendant or corrections staff. He does not contend that he was engaged in a constitutionally protected activity when he refused to cooperate in the contraband inquiry, nor does he allege injury to his ability to exercise a protected right. Thus, no constitutional claim is stated.

### B. Due Process

To the extent Holbrook intends to bring a due process claim based on his placement on administrative segregation, his claim fails. The procedural protections of the Due Process Clause apply when inmates have a liberty interest arising from the loss of good time credits, thus

lengthening the amount of time to be served. *See Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). Where these circumstances are not implicated, prisoner due process rights are based on mandatory language in state law or regulations that create enforceable expectations, *see Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (finding that prisoners are entitled to due process to ensure that state-created rights are not arbitrarily abrogated); *see also Meachum v. Fano*, 427 U.S. 215, 228 (1976) (finding that a prisoner's expectations amid prison officials' discretion are too ephemeral and insubstantial to trigger procedural due process protections), or where the adverse action imposes "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; (1995); *Wilkinson v. Austin*, 545 U.S. 209 (2005); *see also Incumaa v. Stirling*, 791 F.3d 517, 528 (4th Cir. 2015) (applying the general prison population as a comparable baseline for atypicality). Holbrook, however, does not allege, nor does the record suggest, that his brief placement on administrative segregation pending investigation, which did not result in a loss of good conduct credits, was an "atypical and significant hardship…in relation to the ordinary incidents of prison life," *Id.*

### C. Security Classification

There is no constitutional right for a prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. A prisoner has no constitutional right to a particular custody or security classification, *see Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (noting that prisoners have no constitutionally protected interest in prison classifications or rehabilitative programs), and no constitutional right to be

housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983); *see also Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). Further, federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control. *See Sandin*, 515 U.S. at 483–84 ("federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment").

In light of the above, the Court concludes that the Complaint fails to set forth any federal claims for relief.

## CONCLUSION

For the reasons stated in this Memorandum, the Court will grant Defendant's Motion to Dismiss. A separate Order follows.

\_\_\_\_8/20/15_____ _____/s/_____
Date                                                                William M. Nickerson
                                                                    Senior United States District Judge